UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| JESSICA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:11CV39MLM |
| | ) | |
| JIM SUMNER, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court are the Motion to Dismiss filed by Defendant the Missouri Department of Corrections ("DOC") and the Motion to Dismiss Plaintiff Jessica Smith's Complaint filed by Defendant Jim Sumner ("Defendant"). Docs. 8, 14.  Plaintiff filed Responses. Docs. 18, 19.  The DOC and Defendant Sumner filed Replies. Doc. 22, 23.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 15.

## LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  See also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (citing Twombly, 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949 (quoting Twombly, 550 U.S. at 555). See also Hamilton v. Palm, 621 F.3d 816, 818 (8th Cir. 2010) ("[A]n allegation in any negligence claim that the defendant acted as plaintiff's 'employer' satisfies Rule 8(a)(2)'s notice pleading requirement for this element.").

Further, in regard to a Rule 12(b)(6) motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ... see, e.g., ... Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Twombly, 550 U.S. at 555-56. See also Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right.'") (quoting Stalley v. Catholic Health Initiative, 509 F.3d 517, 521 (8th Cir. 2007)).

Additionally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556 (citation omitted). "The issue

is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

To the extent it has been argued that Twombly is applicable only in the anti-trust context, the Court in Iqbal, 129 S.Ct. 1937, made it clear that Twombly is applicable in a broader context.

In civil rights actions a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss.  Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

## BACKGROUND

Plaintiff brings her cause of action against DOC and against Defendant Sumner, in both his individual and official capacities.  Plaintiff alleges that at all relevant times Defendant Sumner was an employee of the DOC working in the maintenance department at the Women's Eastern Reception, Diagnostic and Correctional Center ("WERDCC") in Vandalia, Missouri, and that, in the course of her confinement at the WERDCC, Plaintiff was assigned to work in the maintenance department where she worked with Defendant Sumner.  In Count I of her Complaint, brought pursuant to 42 U.S.C. § 1983,[1] Plaintiff alleges that Defendant Sumner sexually harassed her in violation of her rights under the United States Constitution; that the DOC retaliated against Plaintiff for reporting and speaking out about Defendant Sumner's sexual harassment of her; and that the DOC's retaliation violated Plaintiff's rights under the United States Constitution.   In Count II, brought pursuant to Title VII, 42 U.S.C. § 2000e et seq.,  Plaintiff alleges that, at all pertinent times, she was an employee within the meaning of 42 U.S.C. § 2000e(f); that at all pertinent times the DOC was an employer

---

[1]     The conclusory paragraph of Count I states that Plaintiff seeks judgment against "Defendant."  It is apparent, however, from the allegations of ¶¶ 41-63 that Plaintiff brings Count I against both the DOC and Defendant Sumner.  Plaintiff brings Counts II and III of her Complaint against both the DOC and Defendant Sumner.

within the meaning of 42 U.S.C. § 2000e(b); that the DOC's conduct, as described in Count I, constituted an unlawful employment practice under 42 U.S.C. § 2000e-2(a); and that, therefore, the DOC's actions were willful violations of 42 U.S.C. § 2000e, et seq. In Count III, Plaintiff alleges the DOC violated the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.055, by the conduct described in Count II.

In the pending Motion to Dismiss, the DOC contends that Count I should be dismissed because the DOC is entitled to sovereign immunity under the Eleventh Amendment for claims under 42 U.S.C. § 1983 and because the DOC is not a "person" under § 1983. The DOC also contends that Counts II and III fail to state a claim under Title VII and the MHRA because, as an inmate, Plaintiff is not an "employee" and the DOC is not an "employer" for purposes of Title VII and the MHRA. As such, the DOC contends that Counts II and III should be dismissed. Defendant Sumner contends that Plaintiff's claim against him, in Count I, in his official capacity should be dismissed as it is barred by the Eleventh Amendment. Defendant Sumner also contends that Counts II and III fail to state a claim against him because Plaintiff is not an employee for purposes of Title VII and the MHRA. Plaintiff responds that she is an employee and that the DOC is an employer for purposes of Title VII and the MHRA. Plaintiff also asserts that the Eleventh Amendment is not applicable to her claims against Defendant Sumner and the DOC.

## DISCUSSION

### A.    Eleventh Amendment Immunity:

The Eleventh Amendment generally bars suits against States in federal courts. SDDS, Inc. v. South Dakota, 97 F.3d 1030, 1035 (8th Cir. 1996). Also, the Eleventh Amendment provides immunity to State officials who are sued in their official capacities. Id. Specifically, the United States Supreme Court has held that a suit brought pursuant to § 1983 against a State department of

corrections "is barred by the Eleventh Amendment, unless [the State] has consented to the filing of

such a suit." Alabama v. Pugh, 438 U.S. 791, 782 (1978) (citing Edelman v. Jordan, 415 U.S. 651,

(1974); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459 (1945); Worcester County Trust Co. v.

Riley, 302 U.S. 292 (1937)). See also Lococo v. Florissant Police Dept., 2008 WL 554254, at *2

(E.D. Mo. Feb. 27, 2008) ("[A] suit against the Missouri Department of Corrections and/or the

Moberly Correctional Center is, in effect, a suit against the State of Missouri; however, the State of

Missouri is not a 'person' for purposes of a § 1983 action and is absolutely immune from liability

under § 1983.") (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 63 (1989)).  In her

Suggestions in Opposition to the DOC's Motion to Dismiss, Plaintiff does not suggest that the DOC

has consented to being sued.[2] Doc. 19.  As such, the court finds that Plaintiff has failed to state a

cause of action against the DOC in Count I and that, therefore, Count I should be dismissed, as to

the DOC, based on Eleventh Amendment immunity.[3] See Twombly, 550 U.S. at 555-56; Gregory,

565 F.3d at 473.

   The Eleventh Amendment is also applicable to § 1983 suits brought against public officials

in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  In

Opposition to Defendant Sumner's Motion to Dismiss, Plaintiff argues that Defendant Sumner is not

entitled to Eleventh Amendment immunity in his official capacity because he is not an alter ego of the

State of Missouri; because any judgment against him in his official capacity would not be paid out of

funds from the State treasury; that any judgment would be paid from a separate fund set aside for

---

[2]     As discussed below, Plaintiff raises this issue of consent in her Suggestions in
Opposition to Defendant Sumner's Motion to Dismiss; she does not argue that the DOC has
consented to being sued in response to the DOC's Motion to Dismiss. Doc. 18.

[3]     The court need not address the DOC's argument that it is not a "person" for
purposes of § 1983.

satisfaction of judgments against State agencies; that, therefore, Defendant Sumner is not entitled to

Eleventh Amendment immunity in his official capacity.  As suggested by Defendant Sumner in his

Reply, Missouri has statutorily designated exceptions to its sovereign immunity.  There is no

provision for excepting employees of the DOC from sovereign immunity. See Mo. Rev. Stat. § §

537.600-537.610.  As such, to the extent Plaintiff sues Defendant Sumner in his official capacity, in

Count I, Defendant Sumner is entitled to Eleventh Amendment immunity.  The court finds, therefore,

that Plaintiff has failed to state a cause of action against Defendant Sumner in his official capacity in

Count I and that Count I should be dismissed in this regard. See Twombly, 550 U.S. at 555-56;

Gregory, 565 F.3d at 473.  The court notes that Defendant Sumner does not move to dismiss

Plaintiff's § 1983 claim against him in his individual capacity based on Eleventh Amendment

immunity.  In summation, as to Count I, the court finds that the DOC's Motion to Dismiss should be

granted as to Count I of Plaintiff's Complaint and that Defendant Sumner's Motion to Dismiss should

be granted, in regard to Count I, to the extent Plaintiff sues Defendant Sumner in his official capacity.

See Twombly, 550 U.S. at 555-56; Gregory, 565 F.3d at 473.[4]

## B.    Count II - Title VII:

In support of their Motions to Dismiss, the DOC and Defendant Sumner contend that Plaintiff

is not an employee and the DOC contends that it is not an employer for purposes of Title VII.

Plaintiff argues to the contrary.

Title VII, 41 U.S.C. 2000e, defines "employer" and "employee" follows:

---

[4]      To the extent Defendants' Motions argue that they are entitled to Eleventh
Amendment immunity in regard to Plaintiff's Title VII claims, the court notes that Congress
abrogated Eleventh Amendment immunity in Title VII cases. Fitzpatrick v. Bitzer, 427 U.S. 445
(1976); Okruhlik v. Univ. of Alabma, 255 F.3d 615, 621 (8th Cir. 2001).  Thus, the Eleventh
Amendment does not provide immunity to either the DOC or Defendant Sumner for the
allegations of Counts II and III.

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ... .
...

(f) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

The court will first consider whether Plaintiff is an employee for purposes of Title VII. In McCaslin v. Cornhusker State Industries, 952 F. Supp. 652 (D. Neb. 1996), a matter factually similar to the matter under consideration, the court addressed whether a state prisoner was an employee for purposes of Title VII.[5] Significantly, the district court in McCaslin noted that there were no Eighth Circuit opinions on this issue. Id. at 656. The court noted, however, that the EEOC issued a decision addressing the applicability of Title VII to prisoners working in jobs at state prisons. Id. (citing E.E.O.C. Dec. No. 86-7, 1986 WL 38836 (Apr. 18, 1986)). In particular, as considered by the district court in McCaslin, the EEOC found that "a number of factors were highly demonstrative of an employer-employee relationship, but stressed that these 'must be considered in light of the total circumstances of the relationship between the [prisoner and the prison].'" Id. (quoting E.E.O.C. Dec. No. 86-7, 1986 WL 38836, at *2). As further considered by the district court, the EEOC went on to say that:

---

[5]       In McCaslin, 952 F.Supp. 652, the plaintiff alleged that she was sexually assaulted by fellow inmates while incarcerated and that the state department of corrections, as her employer, failed to take corrective action and eventually terminated her.

[The] relationship arose from the [prisoner's] having been convicted and sentenced to imprisonment in the [State's] correctional institution. The primary purpose of their association was incarceration, not employment. Consequently, the [State] exercised control and direction not only over the [prisoner's] work performance but over the prisoner himself. The conditions under which he performed his job were, thus, functions of his confinement to the [State's] institution under its control. While the [prisoner] received monetary compensation for his work, that compensation was minimal.... Finally, although the [prisoner] was not required to work for the [State], his very job flowed from his incarceration and was dependent on his status as a prison inmate. Considering these circumstances as a whole, we are persuaded that the reality of the work relationship between the [State] and the [prisoner] was not one of employment.

Id. at 656.

As additionally stated by the district court in McCaslin:

The EEOC opinion went on to bolster its conclusion by noting that its finding in this regard "is consistent with the Department of Labor's interpretation of the term 'employee' under the Fair Labor Standards Act of 1938 [ (FLSA) ], as amended, 29 U.S.C. § 201 et seq. (1982)." The EEOC recognized that the FLSA defines "employee" in "virtually the same words as does Title VII" and that in similar circumstances the Department of Labor has not found the prisoner to be an employee protected by Title VII. Id. (citation omitted). Furthermore, such has been the holding of nearly every court that has addressed the FLSA's application to prisoners working in state prisons for prison industries. See, e.g., McMaster v. State of Minn., 30 F.3d 976, 980 (8th Cir.1994) (holding that FLSA does not apply to prisoners working within the prison for state prison industries); Franks v. Oklahoma State Indus., 7 F.3d 971, 972 (10th Cir.1993) (holding that the minimum wage provisions of the FLSA do not apply to state prisoners working in state prison jobs); Hale v. Arizona, 993 F.2d 1387, 1395 (9th Cir.) ( en banc ) (holding prisoners who must work pursuant to state law are not "employees" of the prison for the purposes of the FLSA) ...; Vanskike v. Peters, 974 F.2d 806, 809 (7th Cir.1992) ("[T]he relationship between the [Department of Corrections] and a prisoner is far different from a traditional employer-employee relationship ....") ... . While these cases are not authoritative with respect to Title VII, they are persuasive to me.

Like the FLSA, I do not find that Title VII applies to the prison setting, when prisoners are mandated to work in state-sponsored, prison-run industries. ...

The relationship between prisoner and prison is not voluntary; it arises out of the prisoner's conviction for a crime and his or her sentencing to a period of incarceration. Williams v. Meese, 926 F.2d at 997. It is not one of

employer-employee. Instead, it is one of jailor-jailed. The prisoner does not enter into a bargain with the prison to become a prisoner in order to be able to work in the prison industries, as might a private individual who contracts with an employer. McMaster v. Minnesota, 30 F.3d at 980 (quoting McMaster v. Minnesota, 819 F.Supp. 1429, 1437 (D. Minn.1993)); Sigler v. Lowrie, 404 F.2d 659, 661 (8th Cir.1968) ... (holding compensation for prison labor is "by grace of the state"). Nor is the prisoner permitted to work or not work at his or her choosing. ... . There was no choice on her part whether to work or not work. In addition, prison personnel classify prisoners for types of positions within the prison and the work is performed within the confines of the prison facility itself, making it difficult or impossible to delineate the limits of the workplace.

... . the prison's control over the prisoner is nearly absolute and necessarily must exist. The prison's control over the prisoner's work is incidental to its control over the prisoner. As noted in Vanskike, "there is obviously enough control over the prisoner; the problematic point is that there is too much control to classify the relationship as one of employment.... [Prisoners] are working as part of their sentences of incarceration." Vanskike, 974 F.2d at 810.

In reliance on Williams v. Meese, E.E.O.C. decision 86-7, and the cases dealing with the FSLA, I conclude that Title VII does not apply to the prisoner working in the state prison, for the state prison industry as part of his or her sentence.

Id. at 656-58.

Significantly, in Battle v. Minnesota Department of Corrections, 40 Fed. Appx. 308, 310 (8th Cir. 2002) (unreported), the Eighth Circuit held that an inmate of the Minnesota Department of Corrections, who alleged denial of a job assignment based on his migraine headaches, was not an employee for purposes of Title VII. (citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).[6] For the reasons stated by the district court in McCaslin, 952 F. Supp. at 656-58, and based on the

---

[6]     Battle v. Minnesota Department of Corrections, 40 Fed. Appx. 308 (8th Cir. 2002), is an unpublished opinion. Nonetheless, it is proper for this court to follow an unpublished opinion which provides persuasive authority. Kloeckner v. Solis, 639 F.3d 834, 838 (8th Cir. 2011). See also Miler v. Northwestern Mut. Life Ins. Co., 392 F.3d 973, 977 (8th Cir. 2004 (holding that a non-binding opinion may be considered where the facts at issue are "very similar" to the matter under consideration and "the court's analysis and reasoning [are] sound"). Moreover, Fed. R. App. P. 32.1(a)(i) provides that "[a] court may not prohibit or restrict the citation of federal judicial opinions ... designated as 'unpublished.'" Additionally, Battle was decided after the decision of the district court in McCaslin v. Cornhusker State Industries, 952 F. Supp. 652 (D. Neb. 1996).

Eighth Circuit's reasoning in Battles, 40 Fed. Appx. at 310, the court finds that Plaintiff, as an inmate

at the WERDCC is not an employee for purposes of Title VII.[7]  The court finds, therefore, that

Plaintiff has failed to state a claim in Count II against both the DOC and Defendant Sumner.  The

court further finds that these Defendants' respective Motions to Dismiss should be granted in regard

to Count II. See Twombly, 550 U.S. at 555-56; Gregory, 565 F.3d at 473.  Because the court has

found that Plaintiff is not an employee for purposes of Title VII the court need not determine whether

the DOC is an employer for purposes of Title VII.

**C.     Count III - MHRA:**

        The DOC and Defendant Sumner argue that Plaintiff is not an employee for purposes of the

MHRA and Plaintiff argues to the contrary.  First, the standards governing Title VII actions generally

are the same standards which should be employed in determining the merit of claims brought pursuant

to the MHRA. See Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 715 (8th Cir. 2000); Smith

---

        [7]     Baker v. McNeil Island Corrections Center, 859 F.2d 124, 128 (9th Cir. 1988),
upon which case Plaintiff relies in support of her argument that she is an employee for purposes of
Title VII is clearly distinguishable from the matter under consideration. First, Baker is a Ninth
Circuit case and this court relies on Eighth Circuit precedent as well as other authority within the
Eighth Circuit and the EEOC's ruling on the matter at hand. Second, the court in McCaslin, 952
F.Supp. at 655, found Baker not controlling. Third, Baker hinged largely on the right-to-control
test used in the context of determining whether an individual is an independent contractor or an
employee. As explained by the court in McCaslin, 952 F.Supp. at 658, such a test is not applicable
in the context of a prison setting where incarceration and the relationship between the parties are
based on the need to "control individuals who have been unable or unwilling to control
themselves."  Fourth, the court in Baker noted that whether an inmate is an employee for
purposes of Title VII was a matter of first impression in 1988; since that date, as discussed above,
there is instructive authority on point, including E.E.O.C. Dec. No. 86-7, 1986 WL 38836. Fifth,
the court in Baker, 859 F.2d at 128, relied on EEOC policy applicable to prisoners on work
release; the EEOC decision upon which the court in McCaslin relied is directly on point as it
applies to persons incarcerated, not to prisoners on work release. Sixth, since Baker was decided
in 1988, the Ninth Circuit held, in Wade v. California Department of Corrections, 171 Fed. Appx.
601, at *1 (9th Cir. March 17, 2006), that an inmate's "relationship with the Prison Industry
Authority ('PIA') was penological not pecuniary, and he was not an employee for Title VII
purposes."

v. St. Louis Univ., 109 F.3d 1261, 1264 n.2 (8th Cir. 1997); Tart v. Hill Behan Lumber Co., 31 F.2d

668, 671 (8th Cir. 1994).  But see Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818-19

(Mo. 2007) (en banc) (distinguishing between Title VII and the MHRA in regard to burden of proof).

Second, in although there are no Missouri or federal reported cases addressing the issue of

whether a prison inmate is an employee for purposes of the MHRA, the Federal District Court for

the Western District of Missouri, in Cotton-Schrichte v. Peate, 2008 WL 3200775, at *4 (W.D. MO

2008) (unreported), relied on Battle, 40 Fed. Appx. at 310, upon dismissing an inmate's claim that

she was an employee under the MHRA.[8]  Thus, for the reasons set forth above in regard to Title VII,

the court finds that Plaintiff is not an employee for purposes of the MHRA.  As such, the court finds

that Plaintiff has failed to state a cause of action in Count III against either the DOC and Defendant

Sumner and that, therefore, Defendants' respective Motions to Dismiss, in regard to Count III, should

be granted.[9]  See Twombly, 550 U.S. at 555-56; Gregory, 565 F.3d at 473.   As stated in regard to

Count II, the court need not determine whether the DOC is an employer for purposes of the MHRA.

## CONCLUSION

For the reasons more fully set forth above, the court finds that the DOC and Defendant

Sumner's Motions to Dismiss should be granted in their entirety, and that, based on the court's

---

[8]     See n.2, above.

[9]     The court notes, in the context of Missouri statutes other than the MHRA,
Missouri courts have found that prison inmates are not employees. See e.g. Porter v. Dep't of
Corrections, 876 S.W.2d 646 (Mo. Ct. App. 1994) (holding that a prison inmate was not an
employee for purposes of Missouri's workers' compensation statute).  Indeed, the considerations
of whether an individual is an employee for purposes of workers' compensation or for purposes of
Title VII may involve different considerations.  Nonetheless, cases addressing whether prison
inmates are employees for purposes of workers' compensation are instructive.

findings, the only remaining issue in this matter is Plaintiff's claim, in Count I, against Defendant Sumner in his individual capacity.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by the DOC is **GRANTED**; Doc.8

**IT IS FURTHER ORDERED** that the Motion to Dismiss Plaintiff Jessica Smith's Complaint filed by Defendant Sumner is **GRANTED**; Doc. 14.

**IT IS FURTHER ORDERED** that the only remaining claim in this matter is whether Defendant Sumner violated Plaintiff's constitutional rights in his individual capacity, as alleged in Count I of the Complaint.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of September, 2011.

12